IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| GARRY WAYNE WHITE, #622752 | § | |
| VS. | § | CIVIL ACTION NO. 9:06cv141 |
| PAUL SLOAN, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Garry Wayne White, an inmate confined at the Gib Lewis High Security Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed in the Southern District of Texas on June 14, 2006. It was dated June 10, 2006. The Plaintiff complained that he was denied medication and food. On June 28, 2006, he filed a document (docket entry #5) in order to initiate criminal proceedings. On the same date, he filed a "General Complaint" (docket entry #11) about being denied medical care and a "General Emergency Complaint of Life Endangerment." On June 30, 2006, the cause of action of transferred to this Court since the Gib Lewis High Security Unit is located here. Upon review of the documents filed by the Plaintiff, the Court noticed that he never submitted his claims on the requisite § 1983 lawsuit form and he was ordered to submit his claims on the standardized form. He submitted the form (docket entry #31) on August 11, 2006. He complained about being denied medical care, harassment, retaliation and disciplinary cases.

After reviewing the various complaints, the Court decided to conduct an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted on October 5, 2006. Regional Grievance Coordinator Chip Satterwhite, Warden Wesley Pratt and Nurse Kathy Gray attended the hearing in order to answer any questions the Court may have concerning prison policy or the Plaintiff's records. Only sworn testimony and authenticated records were accepted during the *Spears* hearing, and the evidence submitted by prison personnel was considered by the Court only to the extent that it does not contradict the inherently plausible and credible evidence offered by the Plaintiff. *Vernado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991). The Plaintiff gave the Court permission to review his prison records.

Due to the piecemeal fashion in which the Plaintiff submitted his claims, the Court began the hearing by asking the Plaintiff why he had sued the various people named in the lawsuit. The Plaintiff testified that he sued Warden Paul Sloan because he had written to him and the problems were not fixed. The Plaintiff sued Sgt. Hussey because he knew about the Plaintiff's problems and failed to correct them. The Plaintiff testified that he wrote grievances and Sgt. Hussey believed what his officers told him. He sued Sgt. Thompson for believing his officers after an investigation.

The Plaintiff testified that he sued Sgt. Foxworth because he often "jacked him for food" and filed disciplinary cases against him. When asked to explain what "jacked him for food" meant, the Plaintiff testified that Sgt. Foxworth would not open the bean slot and pass his meal through it. The Plaintiff testified that his problems began with Sgt. Foxworth when they had an argument. Sgt. Foxworth filed a disciplinary case against the Plaintiff for threatening an officer and never fed him after the incident. The Plaintiff testified that he sued Sgt. Little because he actually saw Sgt. Foxworth, who was a correctional officer at the time, fail to feed him on one occasion.

The Plaintiff sued Officer Monroe for making derogatory comments to him using racial slurs and comments about his Muslim religious beliefs. Officer Monroe likewise failed to feed him on occasion. The Plaintiff acknowledged that officers will not feed inmates if they have their windows covered, but he added that he never had his window covered when officers were handing out food.

The Plaintiff sued Officer K. Thomas for harassing him by using racial slurs and for failing to feed him at times.

The Plaintiff sued Captain Connley Moore, a disciplinary captain, who presided over some of his disciplinary cases. The Plaintiff testified that Captain Moore sometimes found him guilty and sometimes found him not guilty. Captain Moore personally investigated the Plaintiff's claims of harassment. He was aware that officers occasionally jacked him for food. Captain Moore asked him to provide a list of names of the officers involved, and the Plaintiff was unable to provide all of the names since he did not know all of their names. Captain Moore did not honor his request for a transfer. The Plaintiff testified that he sued Captain Moore for sometimes finding him guilty even though he knew about the problems. Morever, Captain Moore failed to fix the problems.

The Plaintiff testified that he sued Head Warden Dawson because he wrote to him and the problems were not fixed.

The Plaintiff sued Major Gaston because he accused him of being a member of the Mandingo Warriors. He testified that Mandingo Warriors are not listed as a security threat group and members of the Mandingo Warriors are not automatically confined in administrative segregation. Still, there were officers who disliked the Mandingo Warriors and harassed him as being a member. The Plaintiff also complained that Major Gaston always rated his disciplinary cases as major cases, which has an impact of his release date. The Plaintiff noted that he was convicted of aggravated robbery

in 1991. He received a forty year sentence. He has served fifteen years and is eligible for parole, but parole officials will not parole him as long as prison officials continue to give him major disciplinary cases.

The Plaintiff testified that he sued Building Captain McFarland because he complained to him about officers' misconduct and he failed to take corrective action.

The Plaintiff testified that he sued Officer Kim Lewis because he filed bogus disciplinary cases against him. The Plaintiff added that his problems with Officer Lewis began with an argument. Officer Lewis asked him if he was threatening him. The Plaintiff told him "no," but Officer Lewis subsequently filed cases against him for assaulting or threatening an officer.

The Plaintiff testified that he sued Officer Shackelford for filing bogus cases against him. He specifically mentioned a masturbating case. He noted that she could not see in his cell when he had the light off, thus she could not tell if he was actually masturbating. Nonetheless, she filed a disciplinary case against him for masturbating. The Plaintiff testified that he sued Officer Sheila Kahla for filing false disciplinary cases against him as well.

The Plaintiff testified that he sued Officer Robert Twine for failing to feed him. Officer Twine also refused to permit him to go to recreation at times. He added that he has not been allowed to go to recreation at all since that incident.

The Plaintiff finally testified that he sued Dr. Moore for failing to properly provide medical care to him. He explained that his big toe has a fungus problem and puss came out of it. Dr. Moore gave him medication and nothing more. The Plaintiff subsequently told him that his foot was swollen and later told him that his leg was swollen. Dr. Moore finally agreed and gave him shots for five days. Dr. Moore likewise failed to give him medical shoes, although he acknowledged that

he did not go anywhere since he was confined in administrative segregation. The Plaintiff argued that Dr. Moore should have given him shots, medication and medical shoes at the very beginning.

The Plaintiff also complained that Sgt. Little took his radio. He had a radio, hot pot and Kofi cap taken. A new but cheaper cap was subsequently given to him.

The Plaintiff testified that he has been the victim of retaliation because of complaints. He acknowledged that he engaged in actions that resulted in problems, such as disciplinary cases, and then he filed grievances and complaints, and then he received new disciplinary cases.

Chip Satterwhite testified under oath that the Plaintiff had exhausted the incidents, but he had not named Sgt. Hussey, Officer Kim Lewis or Officer Sheila Kahla in his grievances. Warden Dawson was named only after being a signature authority denying a Step 1 grievance.

Warden Pratt testified about types of situations that could lead to an inmate in administrative segregation not being fed. They would not be fed if they had their window covered, or had their light turned off or was standing by the bean slot when food was being passed out. Inmates are required to stand at the back of their cell with their light on when food is passed out. He explained that officers are vulnerable when they pass out food through the bean slot. They can be attacked, thus the officers must be able to see the inmates when they are passing out food. He further noted that disciplinary cases will have an impact on inmates regarding promotions in their classifications, which have an impact on parole consideration,

Nurse Gray testified from the Plaintiff's original medical records. She testified that the records reveal that the Plaintiff weighed 183 pounds in May, 2006. He weighed 184 pounds on September 1, 2006. The Court would add that the medical records reveal that he weighed 190 pounds in November, 2005. He has been enrolled in the Anger Management Program. He has been

diagnosed as having Schizoaffective Disorder. The Court would add that the medical records reveal that this condition was first observed on October 3, 2004. The Plaintiff was seen for a big toe problem on June 23, 2006. The doctor did not observe any swelling. Nurse Gray testified that the Plaintiff has a thickened toenail due to fungus, and she noted that it takes years for a toenail to become thickened by a fungus. The doctor tried to explain proper healthcare to the Plaintiff, but the Plaintiff became angry and threatening. The examination was ended with a notation to continue to observe and provide pain medication as needed.

The Plaintiff testified that he understands problems involving fungus and his toe. He tried to explain that puss was coming from the toe, but the doctor would not listen to him.

The Plaintiff was finally asked about whether he had filed a life endangerment request. He testified that he had filed several. He was concerned about inmates rolling doors in administrative segregation. He feared that one of these inmates would harm him. He also feared that officers would place something in his food, such as poison. His complaints were investigated and denied.

Chip Satterwhite testified under oath that the records include two life endangerment studies while the Plaintiff has been confined at the Gib Lewis Unit. The first study concerned the Plaintiff's fears about other inmates. He exhausted his Step 1 and 2 administrative remedies with respect to this claim. A second life endangerment study was made about Plaintiff's fear of officers. He filed only a Step 1 grievance in response to this study.

The first matter for the Court's consideration involves the claims that are properly before the Court. The original complaint was dated June 10, 2006. Other complaints were filed on June 28, 2006. A party may amend his pleadings once as a matter of course any time before a responsive pleading is served; otherwise, he may amend only by leave of court or by written consent of the adverse party. Fed. R. Civ. P. 15(a). A party must have permission from the Court to file

supplemental pleadings about occurrences or events that occurred since the date of the pleading sought to be supplemented. Fed. R. Civ. P. 15(d). The Plaintiff routinely files amended and supplemental pleadings without seeking permission from the Court. The Court will be generous and consider his original complaint (docket entry #1), his order to initiate criminal proceedings (docket entry #5), his General Complaint (docket entry #11) and the amended complaint (docket entry #31) filed in response to an order from the Court to use the § 1983 form. The supplemental complaints, notices and emergency complaints subsequently filed by him are not properly before the Court and shall not be considered.

    A review of these various complaints reveal that the Plaintiff complained in the original complaint about being denied medication on June 10, 2006, and being denied food on unspecified dates. In the General Complaint, he complained about the denial of treatment for his big toe and the confiscation of property. His General Emergency Complaint of Life Endangerment discussed not being fed and his fear of being victimized or harassed because of being Muslim or a Mandingo Warrior. In his amended complaint on the § 1983 form, he complained that he wrote to Warden Paul Sloan about his problems. He complained about Major Gaston telling people he was a gang member and how he graded his disciplinary cases. He complained that Captain Moore found him guilty in disciplinary cases. He complained about Officer Twine filing disciplinary cases against him and harassing, retaliating and mistreating him. He finally complained about the medical treatment provided by Dr. Moore. These claims are properly before the Court.

    The next matter for consideration is exhaustion of administrative remedies. The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The Supreme Court accordingly unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001). *See also Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001). The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Most recently, the Supreme Court reiterated that exhaustion is mandatory and will not be excused when an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 126 S.Ct. 2378 (2006). It is noted that the grievance procedures take approximately ninety days to complete. *See Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998). It is further noted that the Court has the option to dismiss civil rights lawsuits with prejudice where an inmate filed a lawsuit before exhausting his administrative remedies. *See Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998).

In the present case, the grievance records reveal that the Petitioner never filed Step 1 and Step 2 grievances regarding his claims against Sgt. Hussey, Officer Lewis and Officer Kahla. The claims against them must be dismissed for failure to exhaust. Similarly, he never filed a Step 1 grievance against Warden Dawson. He added him to his Step 2 grievance only after Warden Dawson denied his Step 1 grievance. Once again, the Plaintiff did not exhaust his administrative remedies against Warden Dawson at both the Step 1 and Step 2 levels, thus the claims against him must be dismissed.

A second concern is whether the Plaintiff exhausted his administrative remedies before he filed the lawsuit on June 14, 2006. The Plaintiff did not file a Step 1 grievance about disciplinary case number 20060310152 until July 2, 2006. Captain Moore was the hearing officer. The Step 2 grievance was denied on August 8, 2006. The Plaintiff did not exhaust his administrative remedies about the disciplinary case until after he filed the lawsuit, thus any claims he had about the disciplinary case must be dismissed for failure to exhaust.

The Plaintiff did not file his Step 1 grievance in Grievance Number 2006176631 about life endangerment involving Warden Sloan, Officer Thomas, Officer Twine and Officer Thompson until June 15, 2006. The Step 2 grievance was denied on August 9, 2006. The Plaintiff did not exhaust his administrative remedies about the claim until after he filed the lawsuit, thus it should be dismissed.

The Plaintiff filed his first Step 1 grievance about denial of medical care and Dr. Moore in Grievance Number 2006163935 on May 27, 2006. The Step 2 grievance was denied on July 25, 2006. Once again, the Plaintiff did not exhaust his administrative remedies before he filed the lawsuit, thus the claims must be dismissed.

The Plaintiff filed a second Step 1 grievance about denial of medical care and Dr. Moore in Grievance Number 2006169735 on June 3, 2006. The Step 2 grievance was denied on July 25, 2006. The Plaintiff did not exhaust his administrative remedies before filing the lawsuit, thus the claim against Dr. Moore must be dismissed for failure to exhaust. It is noted that the Plaintiff filed another grievance about Dr. Thomas denying him medical care for his toe in Grievance Number 2006043800, but the Plaintiff has not named a Dr. Thomas as a defendant.

The Plaintiff filed another Step 1 grievance against Officer Thompson, Grievance Number 2006159656, about harassment, life endangerment, mistreatment, retaliation on May 18, 2006. The Plaintiff also mentioned Captain Moore. The Step 2 grievance was filed on June 8, 2006, and rejected on July 12, 2006. The Plaintiff had not properly exhausted his administrative remedies concerning such claims before he filed the lawsuit, thus such claims must be dismissed for failure to exhaust.

The Plaintiff filed a Step 1 grievance in Grievance Number 2006114473 about life endangerment involving Officer Nix, Officer Stewart, Warden Sloan, Major Gaston, Officer

Shackleford and Captain McFarland on March 7, 2006. The Step 2 grievance was denied on June 1, 2006. This claim was properly exhausted before the lawsuit was filed and is properly before the Court.

The Step 1 grievance in Grievance Number 2006110818 concerning profane and abusive language against Defendants Little and Foxworth was filed on March 2, 2006. The Step 2 grievance was denied on June 9, 2006. The Step 2 grievance was denied before the Plaintiff filed the lawsuit, thus the claim was exhausted before the lawsuit was filed. The claim is properly before the Court.

In Grievance Number 2006093312, the Plaintiff filed a Step 1 grievance about bacteria in his food on February 3, 2006. He did not name anyone in both the Step 1 and Step 2 grievance. The Step 2 grievance was denied on March 9, 2006. The claim has been exhausted, but none of the Defendants named in the lawsuit were included in the claim.

Grievance number 2006089034 concerned Officer Monroe failing to feed the Plaintiff. The Step 1 grievance was filed on January 22, 2006. The response noted that the Plaintiff was not initially fed because he had his cell door window covered. Officer Monroe specified that the Plaintiff was fed when he removed the paper. The Step 2 grievance was denied on March 8, 2006. The Step 2 grievance was denied before the lawsuit was filed, thus the Plaintiff properly exhausted the claim before he filed the lawsuit.

Grievance Number 2006082939 concerned allegations that Officer Monroe cursed the Plaintiff and called him racially and religiously derogatory names. The Step 2 grievance was denied on March 8, 2006, and the claim was fully exhausted before the lawsuit was filed. Grievance Number 2006031460 likewise concerned allegations that Officer Monroe used racial slurs against the Plaintiff. The Step 2 grievance was denied on February 22, 2006. The racial slur claims against Officer Monroe were fully exhausted before the lawsuit was filed.

A summary of the grievance records reveal that the Plaintiff exhausted his life endangerment claims before he filed the lawsuit against Defendants Sloan, Shackleford, Gaston and McFarland. He exhausted his profane and abusive language claims against Sgt. Little and Officers Foxworth and Monroe. He also exhausted his denial of food claim against Officer Monroe. The remaining claims should be dismissed because the Plaintiff did not exhaust his administrative remedies before he filed the lawsuit.

With respect to claims of life endangerment, the Court notes that the Eighth Amendment affords prisoners protection against injury. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "[A]n Eighth Amendment claimant need not show that a prison official acted believing that harm would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. *Id.* at 843 n.8. A prisoner does not have a basis for a civil rights claim for failure to protect because he disagrees with decisions made by officials. *Neals v. Norwood*, 59 F.3d 530 (5th Cir. 1995).

In the present case, the Plaintiff testified that he feared for his safety. The Plaintiff's Grievance Number 2006114473 primarily focused on Officers Nix telling Officer Stewart to open the cell door. Neither officer were named as defendants. Officer Nix purportedly told Officer Stewart to open the cell door to permit another inmate to have access to the Plaintiff. Defendants Sloan, Shackleford, Gaston and McFarland are named because he sought help from them after the fact. The Plaintiff acknowledged that his grievances were turned down because supervisors believed their officers, instead of him. For purposes of civil rights litigation, the dispositive factor is that the Plaintiff's complaint was investigated. It was not ignored. The Defendants were not deliberately indifferent. The Plaintiff does not have a basis for a deliberate indifference claim because he disagrees with their conclusion. The life endangerment claim, which is a deliberate indifference to safety claim for purposes of § 1983 litigation, fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff's next exhausted claim is that Defendants Little, Foxworth and Monroe used abusive and threatening language towards him, including the use of racially and religiously based slurs. Verbal harassment, without more, does not amount to a constitutional violation. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). For example, in *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002), the Fifth Circuit held that verbal abuse and requiring an inmate to beg for food did not provide a basis for an actionable claim under § 1983. "[M]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983), *cert. denied*, 464 U.S. 998 (1983). *See also Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973) (the use of words, no matter how violent, does not

comprise a § 1983 violation). The claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The abusive and threatening language claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also complained that Officer Monroe occasionally "jacked him for food," which means that he denied him food. The Plaintiff claimed that other officers likewise denied him food, but he only exhausted his claims against Officer Monroe. A state must furnish its prisoners with reasonably adequate food. *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir. 1977). The meals must be well balanced and containing nutritional value to preserve health. *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977). The prison system is not required to provide inmates with three meals a day. *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986). Moreover, the Fifth Circuit dismissed a lawsuit by an inmate where he claimed he was denied admittance to the dining hall for an evening meal on eight occasions over a seven month period. *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). A prisoner is not subjected to cruel and unusual punishment by being denied meals because he will not kneel down and face the wall at the back of his cell with his hands behind his back while meals are being distributed during a lockdown. *Talib v. Gilley*, 138 F.3d 211 (5th Cir. 1998). The fact that the Plaintiff occasionally missed a meal does not provide a basis for a potentially meritorious lawsuit. Furthermore, to the extent that he had paper on his window when food was being passed out, he does not have a basis for a civil rights lawsuit due to the security needs of the institution.

The denial of food claim, as well as the previous two claims, should be dismissed for the additional reason that the Plaintiff has not shown harm. Fundamental to any civil rights case, a plaintiff must show an injury as a prerequisite to recovery under § 1983. *McCord v. Maggio*, 927

13

F.2d 844, 849 (5th Cir. 1991). *See also Crowder v. Sinyard*, 884 F.2d 804, 812 n. 8 (5th Cir. 1989), *cert. denied*, 496 U.S. 924 (1990). In *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002), the Fifth Circuit held that mere verbal abuse is not actionable under § 1983 due to the absence of a physical injury. The Plaintiff's medical records reveal that he did not lose any weight during the months in question. He was not harmed because he occasionally was not provided a meal. The denial of food claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The provisions of 42 U.S.C. § 1997e(c) permit a Court to dismiss claims that are frivolous or fail to state a claim upon which relief may be granted even though an inmate failed to exhaust such claims. In light of this provision, the Court believes it would be worthwhile to briefly discuss some of the Plaintiff unexhausted claims.

The Plaintiff complained about the medical care provided by Dr. Moore for his big toe. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. at 835, the Supreme Court noted that deliberate indifference involves more than just mere negligence. Once again, the Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."" *Id.* at 837.

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). Dissatisfaction with medical treatment or a diagnosis does not constitute "deliberate indifference" to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle v. Gamble*, 429 U.S. at 106; *Johnson v. Treen*, 759 F.2d at 1238.

The Plaintiff's acknowledged that Dr. Moore gave him medication at first, although he thought that shots and medical shoes should have also been provided from the beginning. He also acknowledged that Dr. Moore did not see any swelling at first. The Plaintiff admitted that he was given shots for his big toe problems after swelling became obvious to the doctor. The facts as alleged reveal that his medical problems were not ignored. Dr. Moore simply provided the medical care that he thought was appropriate, as opposed to the medical care that the Plaintiff wanted. The facts as alleged do not amount to deliberate indifference. The medical claim against Dr. Moore should be dismissed with prejudice pursuant to 42 U.S.C. § 1997e(c).

The Plaintiff also complained that he was given false disciplinary cases. Because the plaintiff seeks damages and the restoration of lost good time credits and/or classification as a result of a

prison disciplinary case, he cannot assert his due process claim in a 42 U.S.C. § 1983 action unless he first shows that the result was reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Plaintiff has not shown that he successfully challenged the disciplinary cases before he filed the lawsuit. His complaints about the disciplinary cases are premature and should be dismissed in accordance with *Balisok*. The claims about the disciplinary cases should be dismissed with prejudice pursuant to 42 U.S.C. § 1997e(c).

The Plaintiff also couched his disciplinary claims and threat claims in terms of retaliation. To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). Officials likewise may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997); *Jones v. Greninger*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). In the present case, the Plaintiff stated that he filed grievances and complaints. He believed that the bad things that were happening to him were the product of retaliation, but he offered nothing more than

speculation and conclusory allegations. The retaliation claims should be dismissed with prejudice pursuant to 42 U.S.C. § 1997e(c).

The Plaintiff also complained about the confiscation of his property. A state actor's negligent or intentional deprivation of a plaintiff's property does not result in a violation of procedural due process rights if there exists an adequate state post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional conduct); *Parratt v. Taylor*, 451 U.S. 527, 535-55 (1981) (negligent conduct); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984). The Texas court system provides an adequate postdeprivation remedy for the taking of any property. *See Holloway v. Walker*, 784 F.2d 1287, 1292 (5th Cir 1986). Moreover, the Texas state administrative and judicial systems provide an adequate state post-deprivation remedy for property taken from prisoners. *See* Tex. Gov. Code § 501.007. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), *cert. denied*, 464 U.S. 897 (1983); *Loftin v. Thomas*, 681 F.2d 364, 365 (5th Cir. 1982). Because Texas has adequate post-deprivation remedies, a prisoner does not have a basis for a § 1983 claim for the confiscation of his property. *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). The property claims should be dismissed with prejudice pursuant to 42 U.S.C. § 1997e.

The Plaintiff also sued supervisory officials because they denied his grievances. Suing an official because he denied the prisoner's grievance does not state a cognizable § 1983 claim. *Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir. 1989); *Thomas v. Lensing*, No. 01-30658 (5th Cir. Dec. 11, 2001). He also complained that supervisory officials denied his requests for help. Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal

17

involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied. The claims against the supervisors should be dismissed with prejudice pursuant to 42 U.S.C. § 1997e(c).

Finally, the Plaintiff also asked to have criminal charges filed against prison officials, but a prisoner does not have a constitutional right to have someone criminally prosecuted. *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990).

In conclusion, the Court finds that the Plaintiff should not be permitted with any of his claims. His lawsuit fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact.

The Court finally notes that the Plaintiff previously had a case where his claims were dismissed as frivolous and/or for failure to state a claim upon which relief may be granted in *White v. Perez*, No. 2:97cv224 (S.D. Tex. June 9, 1998). The dismissal of the present lawsuit counts as a second "strike" for purposes of 28 U.S.C. § 1915(g). He is warned that upon the accumulation of three strikes, he will not be permitted to file *in forma pauperis* any new civil actions or appeal while confined in prison unless he is under imminent danger of serious physical injury. It is accordingly

**ORDERED** that the complaint is **DISMISSED** with prejudice. All motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **6** day of **October, 2006.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE